IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JOSEPH R. FALASCO**                                                          PLAINTIFF

v.                              CASE NO. 4:23-CV-01054-BSM

**USAA CASUALTY INSURANCE COMPANY**                    DEFENDANT

**ORDER**

USAA Casualty Insurance Company's motion for partial summary judgment [Doc. No. 28] is granted, Joseph Falasco's motion to exclude the testimony of Mark McGillivray [Doc. No. 22] is denied without prejudice as moot, and Falasco's motion to exclude the testimony of Roy Da Silva [Doc. No. 24] is denied.

I. BACKGROUND

Joseph Falasco bought a non-functioning 1974 Porsche 911S for $10,000 and put a significant amount of time and money into restoring it, including the installation of a new engine and transmission. May 23, 2024 Letter from Plaintiff's Counsel 2–3, Doc. No. 33-1. Several years later, Falasco submitted two separate insurance claims to USAA for damage to his car. Defendant's Statement of Material Facts in Support of Motion for Partial Summary Judgment ¶ 2, Doc. No. 30 ("USAA SMF").

He first submitted a claim for cosmetic damage to the hood. *Id.* ¶¶ 3–4; Joseph R. Falasco's Response to Defendant's Statement of Material Facts in Support of Motion for Partial Summary Judgment ¶ 4, Doc. No. 38 ("Falasco SMF Resp."). USAA paid Falasco $2,967.60 for that claim and Falasco took the car to a shop to have the damage repaired.

USAA SMF ¶¶ 5–6.  Approximately six months later, Falasco informed USAA that the repair shop had not yet repaired the damage but had left the car outside with its windows down during a rainstorm, which caused additional water damage.  *Id.* ¶¶ 7–8.  Three days later, Falasco picked up his car from the repair shop.  *Id.* ¶ 9; Falasco SMF Resp. ¶ 9.

The day after picking up his car, its engine caught on fire while Falasco and his daughter were in it.  USAA SMF ¶ 10.  Falasco pulled into the driveway of an apartment complex and attempted to extinguish the fire, but his extinguisher failed.  *Id.* ¶ 11; Joseph R. Falasco's Response to Defendant's Motion for Partial Summary Judgment 2, Doc. No. 37 ("Falasco MPSJ Resp.").  The fire department came to the scene but the police did not.  USAA SMF ¶ 12.  Falasco reported this event to USAA while his car was on fire.  *Id.* ¶ 13.

A USAA representative named Bree answered Falasco's call.  Falasco MPSJ Resp. 3.  Falasco told Bree that he believed his car was totaled.  *Id.*  After Bree confirmed Falasco's personal and insurance details, she asked Falasco if he filed a police report.  *Id.*  Falasco responded that the fire department was on the scene but he did not know about a police report.  *Id.*  Falasco offered to call the police but Bree told him that he did not need to, and that if he received a police report later, he could give it to USAA.  *Id.*  Bree arranged for a tow truck to take Falasco's car to his property.  *Id.* at 3–4.  Bree then told Falasco that she had all the details of his claim and that she submitted the claim to an adjuster.  *Id.* at 4.  She told Falasco that an adjuster would contact him if additional information was needed and that a field appraiser would inspect the car.  *Id.*

Two days later, USAA's adjuster, Belicia Adams, called Falasco to gather details

regarding his claim. USAA SMF ¶ 19. Adams asked Falasco whether the police or fire department told him what caused the fire, and Falasco replied that they did not. Falasco MPSJ Resp. 4. Adams then asked whether the police or fire department gave Falasco a case number or report, and Falasco replied that they did not. *Id.* Adams explained that USAA would have to conduct its own fire investigation if there was no report. USAA SMF ¶ 22. During this call, Adams became confrontational with Falasco and referred to the claim as a "dispute." Falasco MPSJ Resp. 5–6.

After the call, Adams emailed Falasco to obtain receipts to help with the evaluation and Falasco timely provided receipts for the parts purchased for the car. *Id.* at 7. Soon-thereafter, USAA requested that Falasco allow it to take the car to a salvage yard. *Id.* Falasco complied and provided the wrecker service the gate code to his property so it could pick up the car while he was not at home. *Id.* Around this time, USAA's appraiser, Jon Richmond, requested photos of the car before the fire, and Falasco complied. *Id.* Richmond asked how much Falasco paid for the seats. *Id.* Falasco explained that he got the seats as part of the chassis. *Id.*

Falasco requested an update on the investigation but received no response. *Id.* Four days later, he again requested an update and was told by Richmond that he was waiting on a valuation to come back. *Id.* Richmond contacted Falasco the next day to ask what happened to the car's headlamps because they were missing. *Id.* Falasco explained that the headlamps were at his house. *Id.* USAA's claim notes from that day show that Richmond questioned whether the fire was accidental. *Id.* at 8.

The next day, Falasco received notice that he had failed to respond to USAA's settlement offer. USAA SMF ¶ 27. Falasco emailed Adams about this letter and copied USAA's CEO, Wayne Peacock. Falasco SMF Resp. ¶ 27. Falasco explained that the letter was false because USAA had not made a total loss offer. *Id.* Later that day, Adams told Falasco that the notice was drafted automatically by USAA's computer system, and that an offer was made but withdrawn before it could be reviewed because the investigation was still under review. USAA SMF ¶¶ 28–29. Falasco asked what USAA was investigating. *Id.* ¶ 31. When Adams failed to provide a direct answer, the conversation became confrontational. Falasco MPSJ Resp. 10–13. After multiple phone calls, Adams informed Falasco that he was under investigation by USAA's Special Investigations Unit for arson and fraud. *Id.* at 13.

Around this time, the salvage yard, Copart, began requesting Falasco to sign over his car's title to USAA. *Id.* Falasco asked USAA to tell Copart to stop emailing him requesting that he sign over the title to his car when the claim had not yet been resolved. Falasco SMF Resp. ¶ 37.

A week later, Eric Smith from Donan Solutions inspected Falasco's car and reported to USAA that the likely cause of the fire was a fuel line leak probably caused by deterioration of the rubber fuel lines. USAA SMF ¶¶ 39–40. Having found no indication of an intentional fire, Smith closed the investigation. Falasco MPSJ Resp. 15.

Two days later, and 32 days after the fire, USAA made a $46,106.75 settlement offer to Falasco, which was immediately rejected. USAA SMF ¶¶ 41–42. Falasco disagreed with the vehicles USAA used as comparables in its reliance upon a CCC One Market Valuation

Report, so he provided his own comps. *Id.* ¶¶ 43–45. Adams requested that Falasco provide receipts and invoices for the work completed on his car and indicated that the dispute team would call him with an update after they reviewed the documents. Falasco MPSJ Resp. 16–18. Five days later, Copart asked Falasco for power of attorney and original title to his car and told Falasco that payment could not be made until it received those documents. USAA SMF ¶¶ 49–50. Falasco again requested that Copart stop asking for the title before the claim was resolved. *Id.* ¶ 51.

The next day, USAA informed Falasco that it would take another one to two weeks to review the documents he submitted. *Id.* ¶ 52. Six days later, Adams informed Falasco that it would not use the comps that he provided. *Id.* ¶ 53. Adams referenced an appraisal clause in the insurance policy and requested that Falasco submit an independent appraisal. *Id.* ¶ 54. Falasco informed Adams that his policy did not have an appraisal clause because appraisal clauses are illegal in Arkansas. *Id.* ¶ 55; Falasco SMF Resp. ¶ 57. The next day, Adams confirmed that her statement regarding an appraisal clause was false. Falasco SMF Resp. ¶ 57.

USAA asserts that Adams's reference to an appraisal clause was an honest mistake because Arkansas is one of only two states that does not allow appraisal clauses. Declaration of Belicia Adams ¶ 7, Doc. No. 28-6 ("Adams Decl."). Falasco, on the other hand, believes that Adams was trying to dupe him. Deposition of Joseph R. Falasco 123:1–2, Doc. No. 37-2.

Three days later, Falasco filed this lawsuit in Pulaski County Circuit Court. USAA

SMF ¶ 58. Four days later, Adams called Falasco regarding title to the car and to request more comparable vehicles from him. *Id.* ¶ 59. Falasco informed Adams that he had filed suit, refused to send more comps, and demanded payment of the settlement amount. *Id.* ¶ 60. Adams told Falasco that USAA could not and would not tender the undisputed amount to Falasco unless Falasco agreed that it was full settlement and the title process was handled, citing "arbitration law" as preventing partial payment. Falasco SMF Resp. ¶¶ 61–62. Later that day, Adams sent a letter informing Falasco that USAA could not pay the settlement amount until the title procurement process was complete, and she provided Falasco the contact information for Copart to complete that process. USAA SMF ¶¶ 63–64. USAA asserts that Adams's reference to arbitration law and USAA's inability to provide partial settlement was an honest mistake. Adams Decl. ¶¶ 9–13. Falasco, on the other hand, believes that USAA was trying to hold the undisputed funds as leverage to negotiate a depressed settlement value. Falasco MPSJ Resp. 22. After retaining counsel and removing the case, USAA tendered the undisputed settlement amount and Falasco transferred title to to USAA. Declaration of Joseph R. Falasco ¶ 12, Doc. No. 37-1.

In addition to CCC, USAA has contracted with multiple appraisers to estimate the value of Falasco's car. USAA SMF ¶ 69. Auto Appraisal Group estimated it had a value between $13,000 and $26,000. *Id.* ¶ 74; Falasco SMF Resp. ¶ 74. Sotheby's estimated it had a retail replacement value of $65,000, with an auction range of between $60,000 and $80,000. USAA SMF ¶ 75; Falasco SMF Resp. ¶ 75. Upon receiving the Sotheby's estimate, USAA paid Falasco the difference between what it had previously paid him and the

$65,000 estimate. USAA SMF ¶ 76. USAA's expert appraiser, Roy Da Silva, estimated Falasco's car had a cash value of $50,000. Roy Da Silva Expert Report 2, Doc. No. 24-7. Falasco believes it will cost $100,000 to replace his car. USAA SMF ¶ 77; Falasco SMF Resp. ¶ 77.

Falasco is suing USAA for breach of insurance contract, bad faith, and unfair claims settlement practices. Compl. ¶¶ 53–76, Doc. No. 2. USAA moves for partial summary judgment on Falasco's bad faith and unfair claims settlement practices claims. Doc. No. 28. Additionally, Falasco is moving to exclude the testimony of two of USAA's experts—Mark McGillivray and Roy Da Silva. Doc. Nos. 22 & 24.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in the light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

B.      Expert Testimony

A witness who is qualified as an expert may give opinion testimony if (1) the expert's specialized knowledge will help a fact-finder understand the evidence; (2) there is sufficient factual basis for the testimony; (3) the expert's principles and methods are reliable; and (4) the expert's principles and methods are reasonably applied to the case at hand. Fed. R. Evid. 702. Courts play a gatekeeping role in ensuring that expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

In determining whether to exclude expert testimony, "the trial judge must [consider] . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592; *see Academy Bank, N.A. v. AmGuard Ins. Co.*, 116 F.4th 768, 791 (8th Cir. 2024) (citing *Kumho Tire*, 526 U.S. at 151) (*Daubert* "factors may also apply to non-scientific expert testimony"). Expert testimony is admitted when an "expert's methodology is reliable and can be reasonably applied to the facts of the case." *Eckelkamp v. Beste*, 315 F.3d 863, 868 (8th Cir. 2002). The party calling an expert must show, by a preponderance of the evidence, that the expert's opinion is reliable. *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 915 (8th Cir. 2017). The weight and credibility given to an expert's testimony should be left to a jury. *See David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1014 (8th Cir. 2012); *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

III. DISCUSSION

A.    <u>Summary Judgment</u>

Summary judgment is granted on Falasco's bad faith and unfair claims settlement practices claims.

*1. Bad Faith*

An insurance company engages in bad faith when it "affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured." *Selmon v. Metropolitan Life Ins. Co.*, 277 S.W.3d 196, 201–02 (Ark. 2008). This is a high standard, and mere negligence or bad judgment is not enough; there must be affirmative misconduct. *Id.* at 202. Even if there is affirmative misconduct, to "constitute bad faith, an insurer's affirmative misconduct must be in pursuit of avoiding its obligations under the insurance policy. Thus, where an insurer . . . reasonably attempts to discharge [] its contractual obligations, the floor falls out from under the insured's bad faith claim." *Tilghman v. Allstate Prop. & Cas. Ins. Co.*, 22 F.4th 752, 756 (8th Cir. 2022).

Despite the many disputed immaterial facts, the undisputed material facts support USAA's motion for summary judgment on Falasco's bad faith claim. This is true because USAA reasonably attempted to discharge its contractual obligations when it offered Falasco the full amount of CCC's valuation of his Porsche 32 days after his claim. *See Sims v. State Farm Mut. Auto. Ins. Co.*, 894 F.3d 941, 945–46 (8th Cir. 2018) (insurer did not act in bad faith for failing to settle underinsured motorist claim, despite insured's contention that insurer should have conducted more thorough investigation and given greater credence to expert

9

evidence she submitted, absent evidence that claims adjuster's assessment of insured's medical expenses was anything more than mistake or bad judgment); *see also* Ark. Admin. Code § 054.00.43-8 (45-day standard for prompt investigation of claims). Also, there "is no evidence that any state regulator or court has ever found CCC's evaluations to be improper, illegal, unethical, unfair, or otherwise inappropriate. In recent years, regulators in a number of states have explicitly approved or endorsed the use of CCC Information Services to value total loss claims." *Fortson v. Garrison Prop. & Cas. Ins. Co.*, No. 1:19-CV-294, 2022 WL 198782, at *6 (M.D.N.C. Jan. 13, 2022). While USAA's blind reliance on CCC may have been bad judgment, it was not bad faith. *See id.* at *8 ("offering an amount of money based on a report prepared by an independent third party approved by regulators and used by many other insurers in many states is not a bad faith refusal to settle").

Finally, Falasco's bad faith claim is further undercut by the fact that USAA voluntarily paid him the difference between the CCC valuation and the Sotheby's valuation. While it is true that USAA's handling of Falasco's claim was a total mess riddled with inconsistencies and misrepresentations, Falasco merely encountered "nightmarish red tape" and "an abrupt attitude" from various USAA representatives, which does not amount to bad faith under the rigorous standard of Arkansas bad faith law. *State Auto Prop. & Cas. Ins. Co. v. Swaim*, 991 S.W.2d 555, 561 (Ark. 1999). Thus, no reasonable jury could find for Falasco on his bad faith claim.

### 2. Unfair Claims Settlement Practices

Summary judgment is granted on Falasco's unfair claims settlement practices claim

because the motion is unopposed. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes waiver of that argument").

      B.      <u>Mark McGillivray</u>

Falasco's motion to exclude expert testimony from Mark McGillivray is denied without prejudice as moot because it appears that USAA was only offering McGillivray's testimony in support of its defense on Falasco's bad faith and unfair claims settlement practices claims. Falasco may renew his motion if USAA attempts to offer testimony from McGilllivray. USAA has until May 7 to provide notice whether it will offer the testimony of McGillivray.

      C.      <u>Roy Da Silva</u>

Falasco's motion to exclude expert testimony from Roy Da Silva is denied because Da Silva's opinion is not "so fundamentally unsupported that it can offer no assistance to the jury . . . ." *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). This is true because Da Silva is an experienced appraiser who specializes in classic cars; thus, he is qualified to testify about the value of Falasco's Porsche. *See Welsh v. Newman Int'l Transp., Inc.*, No. 2:10-CV-582, 2011 WL 3958452, at *3–6 (M.D. Fla. Sept. 8, 2011) (experience of classic car appraiser sufficient despite lack of publications and licensure, as well as expert's reliance on "talking with friends" and the "inexactitude of the comparables to the subject vehicles"). Da Silva's expertise will aid the jury due to the complexity of the classic car market. While Falasco

understandably disagrees with Da Silva's opinion, he may address his disagreement through "[v]igorous cross-examination [and] presentation of contrary evidence." *Daubert*, 509 U.S. at 596.

## IV. CONCLUSION

For the foregoing reasons, USAA's motion for partial summary judgment is granted, Falasco's motion to exclude the testimony of McGillivray is denied without prejudice as moot, and Falasco's motion to exclude the testmony of Da Silva is denied.

IT IS SO ORDERED this 2nd day of May, 2025.

                                                                                        UNITED STATES DISTRICT JUDGE